We've got the court reassembled and we'll go ahead and call the cases. We've got a combined, consolidated set of cases here. Fischbein v. Olson Research Group and Mau the v. ITG, Inc. We'll ask for counsel for the appellants to go ahead and introduce themselves and let us know whether you want any time for rebuttal. Good afternoon. May it please the court. My name is Phillip Bach and I'm appearing on behalf of both plaintiffs and I would like to please reserve five minutes for rebuttal. Done. The facsimiles at issue are advertisements under the TCPA. In its two prior rulings in the Mau the Optum case and the Mau the NIA case, this court noted that to be an ad, the fax must promote goods or services to be bought or sold and it should have profit as an aim. Defendants' faxes satisfy that standard and they also fit within the TCPA's definition of advertisement, which is any material advertising the commercial availability or quality of any property, goods, or services. Here the faxes offered property in the form of money to particular qualified individuals. How does money equate to property? What in the statute itself indicates that money is what the statute means when it speaks about property? Well, I mean the definition of property includes money. There's nothing that indicates that it doesn't, that they meant all forms of property except money. Well, in common parlance, people speak about property. They generally are not talking about money. They're talking about real or personal property. I think that's a fair statement. But sometimes, you know, there's a statute which will go out of its way to say, you know, currency or money does fit that. But in the context of the TCPA itself, do you have anything that indicates, oh, when they offer money for your time, they're really offering, it's really about property. I think the definition is broad and says any property, goods, or services, exchange for any property, goods, or services. Money is the ultimate exchange, right? If it was a lawn chair in exchange for a haircut, that would be property, goods, or services. I don't see any intent for Congress to exclude offers to exchange money for other property from this statute. Sorry. It says in the related section of the TCPA, you know, the 227-84 talks about initiating a call or message for the purpose of encouraging the purchase or rental of or investment in property, goods, or services. So in that context, it certainly appears that when it talks about purchase of, rental of, investment in property, it means real property in context, right? I mean, you know, it's true that you might, you know, in some remarkably broad sense, a person investing in monetary futures might say, oh, and I'm investing in currency. But in this context, property investing in or purchasing or renting seems to indicate real property, doesn't it? I mean, in that particular section, perhaps. In this section, no. Well. Otherwise, it means. I'm sorry. That's the question, Mr. Bach, is why would we read that same term to mean something different in another section than what it seems clearly to mean in a nearby section of the TCPA? I don't. Because you would be ruling that offers to buy or hire are not advertisements, according to the definition Congress wrote. So faxes that say we buy gold or we buy used office equipment or I want to hire somebody to mow my lawn, those are not advertisements under that definition. If money, an offer for money to exchange money in exchange for those things isn't an advertisement. Another way to look at it, though, would be that these faxes were advertising the commercial availability of the recipient's services. They were advising the recipient that if he was willing to provide property, goods or services in exchange for money, they were willing to talk to him about doing that deal, $200 to talk about neurological disorders, managing disorders in neurological patients. So these are want ads. In the old school parlance, these are want ads, right? Yeah. I mean, want ads, that's the way newspapers used to make most of their money, I think, is want ads. And that's what you have here? Your position, that's what you have here? Essentially. They're not wanting you for very long. They're just wanting you for 45 minutes or 20 minutes, but they're trying to buy your business opinion. I would like to talk to appellate judges about how to make an oral argument, and I'm willing to pay $200 an hour for them to tell me anonymously what they think. If I send that by fax, I should have permission before I just start sending it to everybody. Otherwise, I violate that statute. Whether it's an advertisement isn't supposed to be the biggest issue. I'm sorry. There's no distinction in your mind between survey work and advertising. As long as if somebody's prepared to say, look, I know your time is worth something, and I'll pay you for your time, but I'm conducting research. As long as there's any exchange of anything for value, that fits the definition of advertisement in your view. That might be too broad, but gathering professional opinions for money to sell to other people is advertising. Pure market research, just, you know, we want to talk to doctors immediately about the coronavirus or something, and we're not going to take that information and sell it to some other company as part of our business so that they can figure out what products to try to sell back to doctors or something. There's no exception for marketing research. Maybe there would be an exception for medical research or something like that or charity work, but there's no exception in the statute, and plaintiffs think there's no basis to create one. And that's because you view their research as a component of a commercial product. Ergo, it is an advertisement. No, it's that I think that that's part of the commercial purpose that makes it an advertisement. The commercial transaction is I'll give Dr. Fishbein $200 to talk to me for an hour. That's what he does now. He's a psychiatrist. You can pay him by the hour, and he'll talk to you. If you want to talk to him about how he treats neurological disorders, that's a business proposition to that doctor. So then how can you distinguish that from the very thing you talked about a moment ago? Take the coronavirus example. I need an expert. I'm soliciting opinions about this. This is important research for what we're trying to accomplish. We'll pay you for your time. That's an advertisement in your view. Well, yeah, I don't know about pure medical research, but there's no indication this is medical research. This is marketing research. We don't really know what they were going to ask and what they were going to do with the answers. Okay. And I think that that matters to whether it's a commercial advertisement. The word commercial is in the definition. I wondered why Congress would pass a law which would deal with the facts that we're seeking to get the recipient to buy something but not to sell something. It seems strange that that could be the law. In this case, the recipient is selling something. The selling is time. Yes, that's what plaintiff argues. You're right. Correct, Your Honor. That's what we argue. So the sale, usually I get a lot of faxes. I guess I should bring suits. I don't know. People want me to pay for a new roof on the courthouse in 10 months. I get that a lot. But in this particular case, the sender of the fax is seeking a commercial transaction. But rather than paying a sale to the recipient, it's simply a buyer to buy something from the recipient. I don't know why Congress would outlaw one but not the other. There's no indication they would have done so intentionally. It would just be if the court reads the definition to only to involve money flowing one direction. Well, we had an NPO in one of Mr. Maldi's earlier cases. Am I saying his name right? How do you say his name, Mr. Bach? Maldi. Maldi, okay. Dr. Maldi, he's been around this block a few times. Last year there was an NPO, a non-presidential opinion against National Imaging Associates. And it's true that it doesn't bind us, but we did say in that case that it wasn't apparent from the content of the fax that Dr. Maldi was being informed that the defendant wanted to sell him something. We seem to be paying attention to the sell side of that, not the buy side. Are we kind of in the same spot now? That was a satisfaction survey case. Why is this different? This is different for a number of reasons. We pointed out in our briefing that the court had a footnote at the beginning that said we're not concerning ourselves with a fax that would be offering to purchase something. The difference with the fax there is there was no commercial transaction proposed. There was no money. It was a how did we do satisfaction survey. It's the very fact that these people were good enough to say, hey, your time's valuable. We'll pay you for taking our survey. That's what sinks them, in your view. I don't think they're offering money out of the goodness of their hearts. They're trying to buy people's professional opinions about what they're doing at work and how it fits into some business that they're doing. And so they send out these, you know, $200 an hour is pretty good money. But they don't want any Joe on the sidewalk. They're not interested in his opinion. They want Dr. Fishbein licensed psychiatrist. His opinion is worth $200 an hour, not his receptionist opinion. And I think that's the difference. All right. Well, we've got your argument. You've reserved five minutes, Mr. Bach. We'll go ahead and turn to counsel for the defendants here. We've got three counsel, each of whom has asked for five minutes. And if that's the way you want to split your time, that's okay. But we'll kind of be watching the clock on that. All right. So who's up first? Good afternoon, Your Honor. It's Samantha Southall of Buchanan, Ingersoll, and Rooney, on behalf of Defendant Appellee Olson Research Group. And as you just mentioned, the defendant appellees in both of these cases have allocated their time amongst ourselves in five-minute increments. I'm going to address whether pursuant to this court's analysis in NIA and Optum, the faxes sent to these plaintiffs were prescribed advertisements. We submit that they're not for two reasons. First, they explicitly disclaim an intent to sell anything to these plaintiffs or to anyone else for that matter. And they also do not encourage plaintiffs to influence the purchasing decisions of defendants' customers. Mr. Early of Mintz-Levin, who is appearing on behalf of ITG Inc., is going to address whether the facsimiles that ask for recipients to participate in market research surveys and in exchange for their time receive honorarians or advertisements. We submit that they are not. And last, my colleague Patrick Durant, who is appearing on behalf of N-Science and ITG Research, will address whether money is property under the TCPA and an offer of monetary compensation can transform the facsimiles at issue into an advertisement. We submit that they're not. When that case talked about the intent to sell, the point of it was